FILED

UNITED STATES DISTRICT COURT     2003 OCT 17  P 2: 22
DISTRICT OF CONNECTICUT

JOHN DOE,                                    :

    Plaintiff                            :     CIVIL ACTION NO.: 3:00CV01096(SRU)

                                             :

V.                                           :

                                             :

UNUMPROVIDENT CORPORATION                    :
F/K/A
PROVIDENT COMPANIES, INC.,                   :
THE PAUL REVERE LIFE INSURANCE               :
COMPANY, PROVIDENT LIFE AND                  :
ACCIDENT INSURANCE COMPANY OF                :
AMERICA and JOHN HANCOCK                     :
MUTUAL LIFE INSURANCE COMPANY,               :

                                             :     OCTOBER 17, 2003
    Defendants

## DEFENDANTS' REPLY RE: MOTION
## TO EXCLUDE EVIDENCE REGARDING
## RESIDUAL DISABILITY BENEFITS

The plaintiff's failure to provide the defendants with any notice of a residual disability claim

or proof of residual disability at any time during the claims process, as well as his continuing

assertion that he is totally disabled, precludes him from now offering any evidence that he is

residually disabled.

## I.     POLICY TERMS

Each of the policies provide that an insured may be eligible for residual disability benefits in

the event that, although they still have the sickness or injury which caused them to be disabled to

some extent, they are able to perform some – but not all – of the important duties of his occupation.

Each policy clearly states that an insured cannot be both totally disabled and residually disabled at

HART1-1134121-1

the same time.  (Paul Revere policy, pp 7-8; Provident policy, p. 8; John Hancock policy,

Residual Rider.)[1]

With each of the policies, an insured claiming to be residually disabled must provide ongoing

proof of his financial status, in addition to providing ongoing proof regarding his disability. (Paul

Revere policy, pp. 8, 9, 16 ; Provident policy, pp. 8-9; John Hancock policy, Residual Rider.)

Additionally, each of the policies describes the formula by which the residual benefit amount will be

calculated, taking into account the insured's prior monthly earnings, current monthly earnings and

inflation.  (Paul Revere policy, pp. 8-9; Provident policy, pp. 8-9; John Hancock policy, Residual

Rider.)

## II. THE PLAINTIFF'S FAILURE TO COMPLY WITH POLICY REQUIREMENTS OF PROVIDING NOTICE AND PROOF OF LOSS BARS HIS CLAIM FOR RESIDUAL DISABILTY BENEFITS

The plaintiff concedes that he never presented a claim for residual disability benefits to the

defendants and never provided the defendants with any notice that he sought such benefits.  He

argues that this failure to satisfy the conditions precedent for residual benefits is excused because,

according to him, the policies did not require him to notify the defendants that he was residually

disabled.  This argument ignores the plain language of the policies and case law.

As the plaintiff admits, pursuant to each of the policies, the plaintiff was required to provide

the defendants with ongoing proof of the "nature and extent of your loss." (Pl. Mem. p. 8.)  This

"nature and extent of your loss" language necessarily imposes upon the plaintiff the obligation to

advise the defendants if he was no longer totally disabled, but was residually disabled.  The plaintiff,

---

[1] Copies of the policies were submitted to the Court with the defendants' initial memorandum.

however, never did so.  Instead, the plaintiff repeatedly reported to the defendants that he was totally disabled from his occupation.

Further, contrary to the plaintiff's statements in his objection, the monthly proof of loss forms which the plaintiff submitted throughout the entire claims process explicitly include questions relating to residual disability.  The Provident Life and Accident claim form has a separate section entitled "for Residual Disability Claims," which directs the insured to provide information regarding his earnings.  Similarly, the Paul Revere form asks the insured to indicate whether he is unable to work or is working in a limited capacity, as well as whether he has been at his place of business during his disability and whether he has earned any money.  (Sample claim forms, Ex. 1.)  The plaintiff's completed claim forms invariably indicated that he was totally unable to perform the duties of his occupation and had not worked at all in his occupation.

By failing to comply with the policy requirements regarding notice and proof of a residual disability claim, the plaintiff denied the defendants the information they needed to determine whether the plaintiff was eligible for residual disability benefits and, if so, the measure of such benefits.  As indicated *supra*, the amount of residual disability benefits awarded to an insured depended upon several factors, including the insured's prior monthly earnings and current monthly earnings.  If the defendants had been aware that the plaintiff was seeking residual disability benefits, they would have required the plaintiff to provide detailed financial information, and, if appropriate, would have conducted an investigation into the plaintiff's earnings, in order to have the data to calculate the appropriate benefits.  Because the plaintiff was not seeking residual disability benefits, however, the defendants did not require this proof from the plaintiff.

Because the plaintiff has no excuse for his failure to provide the defendants with notice and proof of his claim for residual disability benefits, he attempts to shift the burden to the defendants, claiming the defendants should have known that the plaintiff sought residual disability benefits notwithstanding his repeated representations to the contrary. This argument that the defendants had some fiduciary-like duty to represent the interests of the insured is contrary to case law and must be rejected.

"The relationship between the insured and the insurer clearly is contractual in nature." Sims v. Honda Motor Co., 225 Conn. 401, 417 (1993) (citation omitted); Harlach v. Metropolitan Property & Liability Ins. Co., 221 Conn. 185, 190 (1992). "While the contract may impose obligations of good faith and fair dealing . . ., no fiduciary relationship is thereby created." Namerow v. Travelers Ins. Co., 1998 Conn. Super. LEXIS 2988, *2 (Conn. Super. Ct. Oct. 19, 1998). The obligation of an insurance carrier to its insured is a contractual obligation arising under the policy of insurance. Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 817 (1997). And, "contract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper." Original Great Am. Chocolate Chip Co. v. River Valley Cookies, Ltd., 970 F.2d 273, 280 (7th Cir. 1992).

The plaintiff – not the defendants – was responsible for determining what benefits he seeks and for complying with the policy requirements in submitting a claim for such benefits. See Grazynski v. Hartford Ins. Co., 1997 Conn. Super. LEXIS 1876, *8 (Conn. Super. Ct. July 10, 1997) ("Because the insurer/insured relationship is contractually based, both parties have a duty to protect their own interests . . ."). If the plaintiff believed he was eligible for residual disability benefits, he

should have so notified the defendants and provided the defendants with proof of his claim.  Because

he failed to comply with the policy requirements regarding residual disability benefits, he cannot

now assert a cause of action to attempt to recover residual disability benefits.  <u>Uberti v. Lincoln</u>

<u>Nat'l Life Ins. Co.</u>, 2001 U.S. Dist. LEXIS 7650 at *35, n. 5 (D. Conn. 2001) ("It is a matter of

settled law that the insured bears the burden of demonstrating that the loss suffered falls within the

terms of the policy."); <u>Harty v. Eagle Indem. Co.</u>, 108 Conn. 563 (1928) (the insured bears the

burden of proving compliance with the policy).

The plaintiff's failure to comply with his obligation to provide the defendants with notice and

proof of a claim of residual disability benefits bars him from asserting at trial that he is entitled to

residual disability benefits.

## III.    THE PLAINTIFF'S CONTINUING ASSERTION THAT HE IS TOTALLY DISABLED BARS HIM FROM CLAIMING RESIDUAL DISABILITY BENEFITS

The policies clearly provide that total disability benefits are separate and distinct from

residual disability benefits.  Under no circumstances can an insured be both totally disabled and

residually disabled at the same time.  The plaintiff has asserted throughout the entire history of his

claim that he was totally disabled.  Indeed, even as recently as June 2003, the plaintiff testified that

he does not think that he is partially disabled.  (Pl. Dep., Ex. 2. pp. 293.)  To the contrary, the

plaintiff contends that he is totally disabled from his occupation as an anesthesiologist and further,

that he has been incapable of performing any of the duties of an anesthesiologist since he left Divine

Providence Hospital in 1995. (Pl. Dep., Ex. 2. pp. 293-94.)

Although a plaintiff may take inconsistent positions in his pleadings early in litigation, where, as here, the matter is ready for trial, the plaintiff must choose which of the two inconsistent positions he will take and the other must be eliminated.  See <u>Aetna Casualty Sur. Co. v. P&B Autobody</u>, 43 F.3d 1546, 1555 (1st Cir. 1994) ("Because procedural law allows alternative contentions, parties to a civil action involving such an array of factual and legal theories as this case presents may be allowed to defer choice at least *until late stages of proceedings* in the trial court.")(emphasis added); <u>International Cargo & Surety Ins. Co. v. United States</u>, 1992 U.S. Dist. LEXIS 10238, No. 91 C 5988, 1992 WL 168954, at *2 (N.D. Ill. July 15, 1992) (refusing to dismiss the plaintiff's unjust enrichment and breach of contract claims but noting that the court "will closely examine any future motion for summary judgment and at that time eliminate any inconsistent claim"); <u>see also</u> <u>Chapa v. Peoples Gas, Light & Coke Co.</u>, 1996 U.S. Dist. LEXIS 11250 (N.D. Ill. Aug. 5, 1996) (stating that plaintiff's claim was a permissible alternative pleading but by allowing said pleading, court did not mean to suggest that such a claim could survive a motion for summary judgment as claims were inconsistent).

By claiming, attesting and averring that he is totally disabled throughout pleading, discovery and deposition, plaintiff has shown that he believes that he is *totally* disabled – and thus he cannot now, in good faith, argue otherwise.

## IV.    THE PREJUDICIAL EFFECT OF EVIDENCE RELATING TO WHETHER THE PLAINTIFF IS ELIGIBLE FOR RESIDUAL DISABILITY OUTWEIGHS ITS PROBATIVE VALUE

Because the plaintiff failed to perform the conditions precedent to asserting a claim for residual disability benefits, the defendants' obligations under the policies to consider whether he was

eligible for residual disability benefits were never triggered. Accordingly, as a matter of law, the defendants' conduct cannot be characterized as a breach of contract. Therefore, the question of whether the plaintiff is entitled to residual disability benefits is not properly before the jury, and any evidence regarding the plaintiff's alleged entitlement to residual disability benefits is irrelevant and immaterial and should be precluded. See Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."); United States v. Lumpkin, 192 F.3d 280, 290 (2d Cir. 1999) (no abuse of discretion where court excluded irrelevant evidence).

It would be fundamentally unfair to allow the plaintiff to attempt to prove that he is residually disabled when he never submitted a claim for residual disability to the defendants for consideration in the claim process. Because the probative value of such evidence is nil, and the risk of unfair prejudice and confusion is high, the plaintiff should be precluded from offering any evidence about his alleged entitlement to residual disability benefits. Meyers v. Arcudi, 947 F. Supp. 581, 589 (D. Conn. 1996) (excluding potentially relevant evidence on the grounds that its probative value was substantially outweighed by its potential prejudice).

## V.    CONCLUSION

For the above-mentioned reasons, as well as the reasons set forth in the defendants' initial memorandum, the defendants respectfully request the Court to exclude any and all evidence, including testimony, regarding the plaintiff's alleged physical disability and his alleged entitlement for residual disability benefits.

DEFENDANTS,
UNUMPROVIDENT CORPORATION F/K/A
PROVIDENT COMPANIES, INC., THE PAUL
REVERE LIFE INSURANCE COMPANY,
PROVIDENT LIFE AND ACCIDENT INSURANCE
COMPANY OF AMERICA and JOHN HANCOCK
MUTUAL LIFE INSURANCE COMPANY,

By _____
Theodore J. Tucci (ct05249)
ttucci@rc.com
Erin O'Brien Choquette (ct18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860)275-8299

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via U.S. mail, postage prepaid, on the

17th of October 2003 to the following:

Jonathan Katz, Esq.
Alinor Sterling, Esq.
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange Street
P.O. Box 606
New Haven, CT  06503

_____
Erin O'Brien Choquette

-8-

# PROVIDENT
# LIFE AND ACCIDENT
INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

SUPPLEMENTARY STATEMENT OF CLAIM

PLEASE FILL OUT AND RETURN
NO SOONER THAN 5 DAYS BEFORE

August 11 1998

RECEIVED

OCT 20 1998

INDIVIDUAL CLAIMS

**Insured:**   David L Simon
40 B Eastbrook Heights

Mansfield, CT 06250

"Paul Revere" claim # 01-02609074-001

1. Please describe for us your current daily activities. Work in Addiction Medicine, on average approximately two (2) days/week

2. Has there been a change in your medical condition since you last completed a report? YES____ NO ✓
   If yes, please describe.

3. Have you been at your place of business since you last completed a report? YES____ NO____ If yes,
   when and for what purpose? Not in any operating room

4. What duties of your occupation are you presently unable to perform? All material duties involved in "the practice of anesthesiology"

5. Have you been hospitalized since you last completed a report? YES____ NO ✓ If yes, give dates of the
   confinement, name and address of hospital.

6. What other disability or retirement benefits including Social Security and worker's compensation are you
   receiving? (List sources and amounts) On File, all with Provident

7. The date you returned to work on a part-time basis: ___/___/___
   The date you returned to work on a full-time basis: ___/___/___    On file, do not work in prior occupation

For RESIDUAL DISABILITY CLAIMS, please complete the following:

N/O MONTHS APPLICABLE GROSS REVENUES $_____ .00 EXPENSES:$_____ .00

Please attach a copy of your monthly Profit and Loss Statement. (however, No income from current practice in addiction med)

Authorization for Release of Information

I authorize any licensed physician, medical practitioner, hospital, clinic, pharmacy, or other medically related facility, insurance company, government organization, Social Security Administration, employer, other organization, institution, or person that has any record or knowledge of me, my health, (including any information relating to the use of drugs and alcohol, and any information relating to mental and physical history, condition, advice or treatment), financial or credit information, earnings, or other insurance benefits to release this information to the Provident Life and Accident Insurance Company or its duly authorized representatives. I also authorize the Provident Life and Accident Insurance Company to request a report from the Medical Information Bureau (MIB), an association of life insurance companies, which operates the Health Claims Index (HCI) and the Disability Income Record System (DIRS). I understand that the dates of my past and present claims with the Provident Life and Accident Insurance Company, excluding medical personal information, will be reported to MIB and that an HCI or DIRS report may reflect this information including the identity of other insurance companies to which I have submitted claims. I further understand that in executing this authorization, information obtained by it will be used for evaluation and administering a claim for benefits. This authorization is valid for the duration of my claim. I know that I or my authorized representative have a right to request a copy of this authorization. A copy of this authorization shall be as valid as the original.

Signed: _____    Date: 10/12/98
                  (Insured)

Residence Address: 40 B EASTBROOK HEIGHTS RD    860-8450-1677
MANSFIELD CENTER    CT    06250    (Home Phone)
        (Street)      (City)    (State)  (Zip Code)    860-450-1555    (Business Phone)

Mailing Address:    SAME
(If Different)        (Street)

P.O. Box 618
Mansfield Center, CT 06250    OCT 16 1998

PRLCL00874

**MONTHLY PROGRESS REPORT TO:**  **THE PAUL REVERE LIFE INSURANCE COMPANY**
P.O. Box 15112, Worcester, MA 01615-0112 Tel: (508) 799-4441

Having previously given Notice of Disability due to ☐ Accident ☑ Sickness beginning _4/12/95_, 19___
Based on the above accident/sickness, I am ☑ Unable to work    and am receiving regular treatment from ☐ Working in a limited capacity

Dr. _GARY KANABY_    Address _207 STORRS ROAD - P.O. BOX 174_
(List all Physicians consulted)

Dr. _____    Address _MANSFIELD CENTER, CT 06250_

Describe how your time is occupied and outline what activities you engage in at present (if working in a limited capacity, describe duties you can perform). _I WATCH T.V. & WRITE ON MY COMPUTER. I HAVE DROPPED OUT OF COLLEGE._

Have you been at your place of business during your disability or earned any money during your disability?
Yes ☐   No ☑   If yes, to either or both, when? _____
Please explain _____

When do you expect to return to work? _I DON'T EVER EXPECT TO PERFORM ANESTHESIA._
Are you receiving or do you expect to receive other disability, retirement benefits, WC, Gov't, or SS disability?    Yes ☑   No ☐
If yes, give sources and amounts 1. _John Hancock Insurance Co_
2. _-- as previously stated on other monthly_
3. _progress reports_

Have you been hospital confined since your last Progress Report?    Yes ☐   No ☑
If yes, where? _____ Hospital, Located at _____
(Street and No.)    (City)    (State)    (Zip)
from _____ 19___ to _____ 19___.

## DISCLOSURE AUTHORIZATION

Insured's Name (Please Print) _DAVID L. SIMON_

I AUTHORIZE: any doctor, health care practitioner, hospital, clinic, other medical facility or provider of health care, insurer or reinsurer, consumer reporting agency, insurance support organization, insured's agent, employer, family members, friends, neighbors or associates, the Social Security Administration or any other organization or person having any knowledge of me or my health to give The Paul Revere Life Insurance Company or its employees and agents, insured's agent, or any consumer reporting agency any information i) as to cause, treatment, or advice of my physical or mental condition; or ii) otherwise needed to determine policy claim benefits with respect to insured. This may include (but is not limited to): driving records, mental illness and use of alcohol or drugs.

I AUTHORIZE: The Paul Revere Life Insurance Company to request a report from the Medical Information Bureau (MIB), which is an association of life insurance companies that operates the Health Claim Index (HCI) for subscriber insurers. An HCI report contains the date(s) of past or present claims filed by me and the names of the companies but does not contain medical or other personal information. I understand The Paul Revere Life Insurance Company will report to MIB the date(s) of any past or present claims filed by me.

I AGREE: the information obtained with this Form may be used by Paul Revere to determine policy claim benefits with respect to insured. A photo copy of this Form is as valid as the original and I may request one. This Form will be in force for the term of coverage of the policy up to one year from the date shown below. I may revoke it at any time for information not then obtained by writing to Paul Revere.

Date: _5/13/96_    Claimant's Signature _David Simon_
(Insured's or Insured's authorized representative)
Soc Sec # _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_
Address _40 B EASTBROOK HEIGHTS RD, MANSFIELD CENTER, CT 06250_
(Street and Number)    (City)    (State)    (Zip Code)

THIS ADDRESS IS: ☐ Temp. ☑ Perm. Phone No. (Include Area Code) _(860) 450-1677_

**IMPORTANT: PLEASE HAVE YOUR ATTENDING PHYSICIAN COMPLETE THE REVERSE SIDE.**

563 (Rev. 6/95)

PRI_CL.00218

Doe vs Unumprovident Corp.

6/24/2003

David Simon, M.D.

Page 293

```
 1    any of facts or issues in this case?

 2        A     Mr. Katz and I met a week ago and we reviewed

 3    some documents.  One I recall was Dr. Findlay's notes which

 4    was sort of chronology of the treatments and I re-red my

 5    testimony from here.

 6        Q     Right.

 7        A     And, um, that's all I recall.

 8        Q     That's fine.  Have you -- other than with your

 9    attorney have you discussed the substance of this case with

10    anybody else since so your last deposition?

11        A     No other than my wife knows I'm here today.

12        Q     Right.  Now, Doctor, can you tell me are you

13    partially disabled?

14        A     I think that would be up for my doctors to

15    decide.

16        Q     What do you think?

17        A     Disabled from what?

18        Q     Are you partially disabled from doing the regular

19    duties of an anesthesiologist?

20        A     I don't think I could do those duties.

21        Q     So you don't -- is it fair to say you don't think

22    you're partially disabled you think you're totally disabled

23    from doing the duties of an anesthesiologist?

24        A     At this point yes.

25        Q     Is it your belief that you're incapable
```

21f96d79-91b1-4bbf-89ca-8c797e1168c5

Doe vs Unumprovident Corp.

6/24/2003

David Simon, M.D.

Page 294

1    of -- unable to do any of the material and substantial

2    duties that an anesthesiologist would be expected to do; is

3    that true?

4          A      That's true.

5          Q      When was the last time you believe you were

6    capable of doing any of the duties of an anesthesiologist?

7          A      Any of the duties?

8          Q      Um-hum.

9          A      I guess when I was at Divine.

10         Q      You're talking about at Divine Providence

11   Hospital?

12         A      Yes.

13         Q      And the last time you were actively engaged in

14   employment there was 1995; correct?

15         A      Correct.

16         Q      Are you currently able to administer general

17   anesthesia?

18         A      Not now, no.

19         Q      Do you have the training and expertise to

20   administer general anesthesia?

21         A      I'm not sure if my expertise is current anymore.

22         Q      You have the training to do it?

23         A      I have -- I've gone through the residency, yes.

24         Q      And you continue to have an active medical

25   license?

21f96d79-91b1-4bbf-89ca-8c797e1168c5