UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOBLE GABRIEL,<br>Plaintiff<br><br>V.<br><br>THE EQUITABLE LIFE ASSURANCE<br>SOCIETY OF THE UNITED STATES,<br>Defendant | TBG JUN 25 2003<br><br>CIVIL ACTION NO. 01CV10064EFH |

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES'
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL A RULE 30(b)(6)
DEPOSITION OF THE PAUL REVERE LIFE INSURANCE COMPANY**

The Equitable Life Assurance Society of the United States ("Equitable") opposes plaintiff's ("Dr. Gabriel") motion to compel the Rule 30(b)(6) deposition of The Paul Revere Life Insurance Company ("Paul Revere"). This deposition was noticed after the expiration of the time for taking fact depositions and is far different in scope than the 30(b)(6) deposition of Paul Revere which Dr. Gabriel noticed earlier in the case, but then chose to abandon. Dr. Gabriel did not take that earlier noticed 30(b)(6) deposition of Paul Revere because he opted instead to take the 30(b)(6) deposition of Equitable. Now apparently rethinking his earlier decision, Dr. Gabriel has re-noticed the deposition. However, not only is he too late, but the information sought by this latest 30(b)(6) deposition of Paul Revere is irrelevant to the issues of this case, overly burdensome, and largely duplicative of the information that Dr. Gabriel has previously obtained through the eleven depositions he has already taken in this case and through Equitable's written discovery responses. Given the highly irrelevant and duplicative nature of the information sought by this deposition notice, Equitable is unwilling to consent to Dr. Gabriel taking a twelfth

{H:\PA\Lit\17675\00001\A0634912.DOC}

deposition in this case. Absent a court order, which should not be granted for the reasons stated herein, this deposition should not go forward.

## I. NATURE AND STATUS OF PROCEEDINGS

Dr. Gabriel claims that Equitable wrongly ceased paying him disability insurance benefits under the policy Equitable issued to him. He seeks to recover from Equitable for breach of contract, negligence, willful, wanton and reckless conduct, violation of Massachusetts General Laws, chapter 93A, violation of Massachusetts Laws, chapter 176D, and negligent infliction of emotional distress. Dr. Gabriel's claims can be boiled down to two questions: (1) is Dr. Gabriel entitled to benefits under the terms of the disability policy issued to him by Equitable? and (2) did Equitable violate any common law or statutory duty in denying Dr. Gabriel's claim?

The parties have engaged in extensive written discovery, followed by fact and expert witness depositions. In what can only be characterized as an extensive fishing expedition in an otherwise straightforward case, Dr. Gabriel has taken 11 depositions to date.

In June 2002, Dr. Gabriel noticed the depositions of Joseph Hayre, Robert Carey and Annemarie Klein, three individuals who were employed by Paul Revere, or one of its affiliates[1], and who were involved in the handling of Dr. Gabriel's claim for disability benefits pursuant to his policy with Equitable. He took these three depositions over the course of 5 days in July and August 2002. Two of the three depositions ran two days long. As he learned, these employees of Paul Revere were administering Dr. Gabriel's claim because Equitable had contracted with Paul Revere for Paul Revere to handle the administration of Equitable's disability insurance policies.

---

[1] On March 27, 1997, The Paul Revere Life Insurance Company became an indirect wholly-owned subsidiary of Provident Companies, Inc. Thereafter, the employees of The Paul Revere Life Insurance Company became employees of Provident Companies, Inc. Subsequently, on June 30, 2003, Provident Companies, Inc. merged with UNUM Corporation to become UnumProvident Corporation. Thereafter, the employees of Provident Companies, Inc. became employees of UnumProvident Corporation.

In July 2002, Dr. Gabriel noticed the 30(b)(6) deposition of Equitable (Exhibit A) and the deposition of Paula Parry, another Paul Revere employee who was involved in the handling of Dr. Gabriel's claim for disability benefits from Equitable.[2] In August 2002, Dr. Gabriel first noticed the 30(b)(6) deposition of Paul Revere (Exhibit B). Through the 30(b)(6) deposition notices to Equitable and to Paul Revere, Dr. Gabriel sought documents relating to the relationship between the two companies.

Due to a scheduling miscommunication, the first 30(b)(6) deposition of Paul Revere did not go forward as scheduled. This scheduling miscommunication was the subject of a motion by Dr. Gabriel for sanctions against Paul Revere, which was denied by the Court on October 15, 2002. Notably, Dr. Gabriel did not move to compel that the deposition go forward, nor did he pursue the rescheduling of that first 30(b)(6) deposition of Paul Revere at any time. Instead, he pursued the 30(b)(6) deposition of Equitable.

After motion practice regarding (1) the topics of Dr. Gabriel's 30(b)(6) deposition notice to Equitable and (2) the documents Dr. Gabriel sought for Equitable to produce, on Order of this Court, Equitable produced to Dr. Gabriel copies of all of the documents he had sought from both Equitable and Paul Revere regarding the relationship between Equitable and Paul Revere.

Following the production of those documents, counsel for Dr. Gabriel discussed with counsel for Equitable whether he should take the deposition of Equitable *or* Paul Revere to obtain testimony about the companies' relationship, the documents that had been produced relative to that relationship, and the handling and administration of Dr. Gabriel's claim for benefits under his Equitable policy. Though counsel for Equitable (who is now also counsel for Paul Revere) recommended that the best deponent on these topics would be Paul Revere because

---

[2] Paula Parry's deposition took place on August 5, 2002.

3

Paul Revere had handled the administration of the claim, counsel for Dr. Gabriel opted instead to take the 30(b)(6) deposition of Equitable.

Equitable designated William Casill as its 30(b)(6) deponent, and the deposition took place on February 28, 2003. Prior to that deposition, in January 2003, Dr. Gabriel filed suit against Paul Revere in Middlesex Superior Court.[3]

Then, in March 2003, although he had already taken and/or noticed 11 depositions in the present action against Equitable, Dr. Gabriel noticed four more depositions. Among the four, he noticed for the second time the 30(b)(6) deposition of Paul Revere (Exhibit C). Equitable objected to all four depositions. (See Exhibit 6 to Plaintiff's Motion to Compel). Thereafter, Dr. Gabriel filed his motion to compel the 30(b)(6) deposition of Paul Revere pursuant to his second deposition notice. (Exhibit C).

In his motion to compel, Dr. Gabriel essentially asserts the following as "reasons" why he should be permitted to take this deposition:

- He already noticed this deposition and the longer schedule A is because these topics allegedly *could not have been discovered* prior to the completion of Equitable's 30(b)(6) deposition;

- At Equitable's 30(b)(6) deposition, "repeated references" were made to Paul Revere's knowledge regarding the questions posed to Equitable's designee;

- Paul Revere and Equitable were allegedly engaged in a joint venture and were joint tortfeasors;

- He is entitled to know the depth of Paul Revere's corporate knowledge and involvement regarding its administration of Dr. Gabriel's claim;

---

[3] Dr. Gabriel's complaint against Paul Revere in the state court action was founded on the same set of facts and contains many of the same counts against Paul Revere as he has asserted against Equitable in this action. Paul Revere moved to dismiss several Counts of the complaint pursuant to M.R.C.P. 12(b)(6). In addition, Paul Revere moved to stay the proceedings in the state court action because the allegations against it are largely duplicative of the allegations Dr. Gabriel is deep in the process of litigating against Equitable in this Court and, in all probability, the matters determined by the this Court will be determinative of the substantive issues in the action he has filed against Paul Revere. These motions are pending in the Superior Court.

4

{H:\PA\Lit\17675\00001\A0634912.DOC}

- He is entitled to know why and how Paul Revere and Equitable held joint responsibility for administering his claim and hid this fact from him;

- He is entitled to discover how Paul Revere and Equitable administered his claim.

None of his asserted "reasons" have merit upon an examination of the facts, discovery and history of this case.

## II. ARGUMENT

Federal Rule of Civil Procedure 26(b)(2) provides, in relevant part, that discovery should be limited if the Court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the party's resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Local Rule 26.1(C) of the United States District Court for the District of Massachusetts provides, in pertinent part: "(C) Discovery Event Limitations. Unless the judicial officer orders otherwise, the number of discovery events shall be limited to each side ... to ten (10) depositions..."

In this case, Dr. Gabriel's Motion to Compel the 30(b)(6) deposition of Paul Revere reflects a discovery effort that is unreasonably cumulative and duplicative. Many of the listed topics about which he seeks testimony have already been attested to from some other source(s), and the burden and expense of the proposed discovery outweighs its likely benefit in light of the discovery completed to date. As such, this Court should not permit Dr. Gabriel to take another deposition over the ten (10) deposition limit imposed by the rules.

The differences between Dr. Gabriel's two 30(b)(6) deposition notices to Paul Revere are significant. To begin, the first notice contained 9 topics on a Schedule A; the second notice contains 34 topics. Contrary to Dr. Gabriel's assertion, these new topics were not discoverable *only* upon the completion of Equitable's 30(b)(6) deposition. Furthermore, Dr. Gabriel has already taken the depositions of four Paul Revere employees who were involved in the administration of Dr. Gabriel's claim (Joseph Hayre, Paula Kolb, Annemarie Klein and Rob Carey) and two medical consultants who were employed by Paul Revere to assist in evaluating Dr. Gabriel's medical condition in conjunction with his claim for benefits (Dr. Anthony Parisi and Dr. Richard Corzatt). The "repeated references" at Equitable's 30(b)(6) deposition to topics within Paul Revere's knowledge were references to only two (2) areas of inquiry (operating manuals and round tables) that were already or could already have been explored by Dr. Gabriel when he took the depositions of the four Paul Revere employees and the two Paul Revere medical consultants.

Contrary to Dr. Gabriel's assertion, Paul Revere and Equitable were not engaged in a joint venture and are not joint tortfeasors. Dr. Gabriel already knows "Paul Revere's corporate knowledge" and he should now be fully aware of how Paul Revere administered his claim on Equitable's behalf, as he has taken the depositions of all of the Paul Revere employees who were materially involved in the administration of his claim; of the medical consultants who were consulted by Paul Revere with regard to his claim; and of Equitable's corporate designee. In addition, the relationship between Paul Revere and Equitable is now quite clear. It was the topic of the many documents Equitable produced to Dr. Gabriel; the subject of the 30(b)(6) deposition of Equitable; and was testified to by the Paul Revere employees who were deposed in July and August 2002.

Dr. Gabriel has already taken 11 depositions, one more than the Federal Court limit. For the reasons stated herein, there is simply no reason for him to be permitted to take as a twelfth deposition this 30(b)(6) deposition of Paul Revere. The 34 topics on the second Schedule A are objectionable for the following reasons. The topics are identified first (in *italics*), followed by the ground(s) for Equitable's objection to them.

> *1.   The complete corporate name and legal identity of The Paul Revere Life Insurance Company from 1993 through the present date.*
>
> *2.   The corporate name and/or identity under which The Paul Revere Life Insurance Company has been registered with the Commonwealth of Massachusetts Secretary of State, Corporations Division, and the Massachusetts Commissioner of Insurance, from 1993 through the present date.*

These topics as identified on the Schedule A of the second 30(b)(6) deposition notice to Paul Revere, are more expansive than they were on the first Schedule A. Moreover, corporate information concerning Paul Revere is irrelevant to Dr. Gabriel's claims against Equitable, the only defendant in this case.

It should also be noted that the first topic was explored in detail at several of the depositions of the Paul Revere employees. Both Annemarie Klein and Joseph Hayre testified to this topic in detail. Furthermore, Dr. Gabriel could easily locate/confirm the information he seeks from the Secretary of State's Office in Boston.

There is absolutely no reason to convene a twelfth deposition in Dr. Gabriel's case against Equitable for him to obtain testimony on these two topics. Furthermore, none of the purported "reasons" for Dr. Gabriel's motion to compel are met by permitting additional testimony on these topics.

> *3.   Any and all administration and marketing agreements, coinsurance agreements, co-marketed business coinsurance agreements, administration agreements, and/or any other service agreements, contracts and/or other agreements, written or recorded, including all exhibits and/or attachments, between the Equitable Life Assurance Society*

*of the United States and the Paul Revere Life Insurance Company, in which the Paul Revere Life Insurance Company agreed to or was engaged to administer and/or resolve claims for disability insurance benefits on behalf of the Equitable Life Assurance Society of the United States, which were in effect or became effective from the time that the Plaintiff, Noble Gabriel, first filed his claim for disability insurance benefits in 1996, until the time the Equitable Life Assurance Society of the United States, ceased paying such benefits in 1998.*

4.   *Any and all agreements and/or other documents which granted authority to the Paul Revere Life Insurance Company to administer and/or resolve disability insurance benefits claims on behalf of Equitable Life Assurance Society of the United States, from the time that the Plaintiff, Noble Gabriel, first filed his claim for disability insurance benefits in 1996, until the time the Equitable Life Assurance Society of the United States, ceased paying such benefits in 1998.*

These topics on the Schedule A of the second 30(b)(6) deposition of Paul Revere are related to documents that have been in Dr. Gabriel's possession since January 2003. There is no reason that he could not have inquired of Paul Revere regarding these documents at an earlier time. In addition, these topics are entirely encompassed in topics numbered 3 and 7 (respectively) of the 30(b)(6) deposition notice to Equitable. On February 28, 2003, Dr. Gabriel obtained extensive testimony from Equitable's 30(b)(6) designee, Mr. Casill, on these topics. Mr. Casill testified that pursuant to the agreements between Equitable and Paul Revere, Equitable allowed Paul Revere to administer its disability claims. Exhibit D, Casill Depo., p. 31.[4] The agreement called for Paul Revere to administer the claims and Equitable to pay Paul Revere for its services in conjunction with the administration of the claims. Exhibit D, Casill Depo., p. 30.

In addition, contrary to Dr. Gabriel's assertion, there was no sinister or misleading motive behind the provision in the agreement between Paul Revere and Equitable that Paul Revere would communicate with Equitable policy holders on Equitable letterhead. (Exhibit 10 of Dr. Gabriel's Motion to Compel). Instead, as Mr. Casill testified, letters were on Equitable's

---

[4] The confidential deposition of William J. Casill was taken on February 28, 2003. Selected pages of Mr. Casill's deposition are attached as Exhibit D and are referenced herein as "Casill Depo."

letterhead "primarily to assure the policyholders that The Equitable is responsible for the continued service of their business." Exhibit D, Casill Depo., p. 50-1.

Because of the discovery he has already elicited, including but not limited to Mr. Casill's testimony on Equitable's behalf, none of the "reasons" set forth by Dr. Gabriel as the grounds for his motion to compel this deposition would be accomplished by having a Paul Revere designee testify to these topics already testified to by Equitable.

> 5. *Any and all written or otherwise recorded, including software, CD Rom or any other recordable form, policies, procedures, protocols, manuals and/or guidelines for administration of disability insurance benefits claims, utilized and/or implemented by the Paul Revere Life Insurance Company, on behalf of the Equitable Life Assurance Society of the United States, which were in effect or became effective at the time that the Plaintiff, Noble Gabriel, first filed his claim for disability insurance benefits in 1996, through the time that the Defendant, the Equitable Life Assurance Society of the United States, ceased paying such benefits in 1998.*
>
> 18. *Written guidelines provided to The Paul Revere Life Insurance Company for the administration of the disability income business from the Equitable Life Assurance Society of the United States by the Paul Revere Life Insurance Company, which governed administration of the claim(s) of Noble Gabriel pursuant to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States.*
>
> 19. *Written guidelines created and/or utilized by The Paul Revere Life Insurance Company for the administration of the disability income business from the Equitable Life Assurance Society of the United States, which governed the administration of the claim(s) of Noble Gabriel pursuant to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States.*
>
> 20. *Any and all operating manuals referred to in the service agreement(s) dated June 18, 1993, between Paul Revere and Equitable.*

Every Paul Revere employee who worked on Dr. Gabriel's claim and who Dr. Gabriel has already deposed, as well as Equitable's 30(b)(6) designee, have all testified unequivocally that no such materials, written guidelines, or operating manuals exist. They have testified that Dr. Gabriel's claim was administered pursuant to his policy with Equitable.

For example, Mr. Casill, Equitable's 30(b)(6) designee, testified as follows:

- Paul Revere administered Equitable's disability insurance claims for the years 1996 through 1998. Exhibit D, Casill Depo., p. 27.

- Equitable did not provide any guidelines to Paul Revere to used when administering disability claims for Equitable for the years 1996 through 1998. Exhibit D, Casill Depo., p. 27-8.

- There were no written guidelines as to how to deny a claim for disability benefits. Exhibit D, Casill Depo., p. 140.

- There were no written guidelines from Equitable to Paul Revere for claims decision processing. Exhibit D, Casill Depo., p. 142.

As counsel agreed at the deposition of Mr. Casill, "There was no claim manual, ..., about how to handle the claim itself." Exhibit D, Casill Depo., p. 29.

Notably, in his Motion to Compel, Dr. Gabriel states that counsel for Equitable repeatedly made references to Paul Revere's knowledge about topics, as grounds for his need for testimony from Paul Revere. One of the two references with which Dr. Gabriel takes issue is Mr. Casill's testimony about whether Paul Revere maintained operating manuals. (See Dr. Gabriel's Memorandum in Support of His Motion to Compel, p. 5 and Exhibit D, Casill Depo., p. 48.) However, Dr. Gabriel does not need to take the 30(b)(6) deposition of Paul Revere to know that there were no such operating manuals. Based on the following deposition testimony and discovery responses, he knows from employees of Paul Revere (Annemarie Klein and Joseph Hayre) that no document other than Dr. Gabriel's policy with Equitable guided the handling of Dr. Gabriel's claim.

Annemarie Klein testified at her deposition that there were no written claim-handling guidelines and there was no manual for Paul Revere at the time she was administering Dr. Gabriel's claim. Exhibit E, Klein Depo., p. 268-9.[5]

Similarly, Joseph Hayre testified that:

- During the entire time he spent administering claims on behalf of Equitable, he was never given any type of policy and procedures manual. Exhibit F, Hayre Depo., p. 29-30.[6]

- During the time he was handling Equitable's claims, there were never any documents that said in substance : When a claim comes in this is what you do to administer it. Exhibit F, Hayre Depo., p. 32-33.

These topics have also been addressed in written discovery and correspondence between counsel. For example, Equitable's response to plaintiff's request for production of documents provides in relevant part as follows:

Request No. 33. Copies of any and all policy and/or procedures manuals, documents, memoranda and/or any other form of writing implemented in any way to govern and/or control the Defendant, Equitable's, method of evaluating, administering and/or processing the claim of the Plaintiff, for disability insurance benefits, at any time during the occurrences set forth in the Plaintiff's First Amended Complaint, in accordance with the provisions of the disability insurance policy issued by the Defendant, Equitable, to the Plaintiff.

Response No. 33. The defendant objects to this Request on the grounds that it is vague, overly broad, ambiguous and does not identify items or categorize the documents requested with reasonably particularity. Without waiving these objections, **the defendant states that the determination of how a claim is evaluated, administered and processed is based primarily upon factual information concerning the specific claim (i.e. medical records, financial information, occupational information, etc.) and upon the terms of the claimant's specific insurance policy. Given the variety of factual information provided by and situations presented in any one claim, these claims do not lend themselves to evaluation, administration, and processing by any set criteria. Further responding, the defendant states that no such documents exist.**

---

[5] The deposition of Annemarie Klein was taken on July 17, 2002. Selected pages of Ms. Klein's deposition are attached as Exhibit E and are referenced herein as "Klein Depo."
[6] The deposition of Joseph Hayre was taken on July 2, 2002. Selected pages of Mr. Hayre's deposition are attached as Exhibit F and are referenced herein as "Hayre Depo."

Request No. 60. Copies of any and all policies and/or procedures provided to any of the following persons, by the Defendant, The Equitable Life Assurance Society of the United States, for handling claims such as the one which is the subject of the Plaintiff's First Amended Complaint, prior to the time that the Plaintiff's claim for disability insurance benefits was noticed to the Defendant, The Equitable Life Assurance Society of the United States.
    A.    Annemarie Klein
    B.    Robert Carey
    C.    Paula Kolb
    D.    Joseph Hayre
    E.    Christina Casarella
    F.    Melissa Dane
    G.    Any other current or former employee of the Defendant, Equitable, who was involved in handling the Plaintiff's claim for disability insurance benefits on behalf of Equitable.

Response No. 60. The defendant objects to this Request on the grounds that it is vague, overly broad, ambiguous and does not identify items or categorize the documents requested with reasonably particularity. The defendant further objects to this Request on the grounds that it seeks information which is not relevant to the claims and defenses in this case and which is not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, **the defendant states that the determination of how a claim is handled is based primarily upon factual information concerning the specific claim (i.e. medical records, financial information, occupational information, etc.) and upon the terms of the claimant's specific insurance policy. Given the variety of factual information provided by and situations presented in any one claim, these claims do not lend themselves to handling by any set criteria. Further responding, the defendant states that no such documents exist.**

Request No. 61. Copies of any and all documents which relate to and/or reference any contribution to formulation, drafting and/or implementation of the policy(ies) and/or procedure(s) of the Defendant, Equitable, which were utilized by any of the following persons, for the occurrences and claims which are the subject of the Plaintiff's First Amended Complaint.
    A.    Annemarie Klein
    B.    Robert Carey
    C.    Paula Kolb
    D.    Joseph Hayre
    E.    Christina Casarella
    F.    Melissa Dane
    G.    Any other current or former employee of the Defendant, Equitable, who was involved in handling the Plaintiff's claim for disability insurance benefits on behalf of Equitable.

Response No. 61. The defendant objects to this Request on the grounds that it is vague, overly broad, unduly burdensome, and seeks information which is not relevant to the claims and defenses in this case and which is not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects to the extent that this Request seeks information protected from disclosure by the attorney–client privilege and/or the work product doctrine. Subject to these objections, **the defendant states that no such documents exist.** (See Exhibit G).

No one has ever even hinted that any of the materials sought by topics 5, 18, 19, or 20 of the Schedule A exist. Given the extensive discovery that has been conducted to date regarding the potential existence of these materials, and the absolute absence of any indication that such materials exist, there is no reason to convene a twelfth deposition to provide Dr. Gabriel with duplicative testimony on this well exercised topic.

> 34.   *Any and all Customer Care Center Claim Manuals which were in effect for the claim(s) for disability insurance benefits from the Equitable Life Assurance Society of the United States, filed by Noble Gabriel, and administered by the Paul Revere Life Insurance Company, for the years 1993 through 2002, in any form, including written or otherwise recorded, software, hard drive, CD Rom or any other recordable form.*

No such manuals exist that are applicable to Dr. Gabriel's claim. Indeed, as indicated above, there were no manuals whatsoever for the time period of Dr. Gabriel's claim. Thereafter, in August 2000, a claim manual was put into place at Paul Revere. However, that claim manual was never utilized in the handling of Dr. Gabriel's claim. The claim decision in October 1998 and the subsequent communications regarding that decision between Equitable's representatives and counsel for Dr. Gabriel occurred over the following approximately eighteen months. However the claim manual was not put into place until August 2000, some twenty two (22) months after Dr. Gabriel's benefits were terminated.

Dr. Gabriel has known of the existence of the claim manual and the fact that it did not apply to his claim since at least July 2002 when he received two letters regarding that manual from Equitable's counsel. See Exhibits H and I.

Because no claim manual was in place relative to Dr. Gabriel's claim, there should be no 30(b)(6) deposition of Paul Revere to discuss this inapplicable claim manual.

> 33. Any and all RIMARE manuals which were in effect for the claim(s) for disability insurance benefits from Equitable Life Assurance Society of the United States, filed by Noble Gabriel, and administered by The Paul Revere Life Insurance Company, for the years 1993 through 2002, in any form, including written or otherwise recorded, software, hard drive, CD Rom or any other recordable form.

Paul Revere objects to this topic on the grounds that it is irrelevant. The issue of RIMARE manuals has never before been mentioned by Dr. Gabriel, or by any other witness in this case. It is unclear therefore, from where this request comes and what relevance Dr. Gabriel believes it has to this case.

Regardless, RIMARE was a former UNUM Life Insurance Company of America electronic claims guide that was never utilized between 1993 and 2002 by either Paul Revere or Equitable, both of whom were competitors with UNUM Life for much of this time. Moreover, even following the merger of UNUM Corporation and Provident Companies Inc. in June 1999, RIMARE was never introduced to Worcester or Springfield, Massachusetts where Dr. Gabriel's claim was administered.

Given that this topic has never been raised before and has no relevance whatsoever to Dr. Gabriel's claim, he should not be permitted to conduct a twelfth deposition on this topic.

> 6. The dates of employment of Joseph Hayre, Annemarie Klein and Paula Kolb, a/k/a Paula Parry, P. David Gilbert and Ralph W. Mohney with the Paul Revere Life Insurance Company.
>
> 7. The identity and dates of employment of any other person, employed and/or engaged by the Paul Revere Life Insurance Company, to administer the claim of Noble Gabriel for disability insurance benefits from the Equitable Life Assurance Society of the United States, from 1996 through 1998.

8. *The name of the corporate or business entity that employed Joseph Hayre, Annemarie Klein and Paula Kolb, a/k/a Paula Parry, P. David Gilbert, Ralph W. Mohney, and any other person employed and/or engaged by the Paul Revere Life Insurance Company to administer the claim of Noble Gabriel for disability insurance benefits from the Equitable Life Assurance Society of the United States, and the dates that each such entity so employed Mr. Hayre, Ms. Klein and Ms. Kolb, a/k/a Parry, and/or any other such person who administered the claim for Noble Gabriel for disability insurance benefits from the Equitable Life Assurance Society of the United States, during the tenure of their employment.*

9. *The training received by Joseph Hayre, Annemarie Klein and Paula Kolb, a/k/a Paula Parry, P. David Gilbert, Ralph W. Mohney and any other person employed and/or engaged by the Paul Revere Life Insurance Company to administer the claim of Noble Gabriel for disability insurance benefits from the Equitable Life Assurance Society of the United States, from or on behalf of the Paul Revere Life Insurance Company, for administering disability insurance claims on behalf of the Equitable Life Assurance Society of the United States, from 1996 through 1998.*

These topics have been thoroughly explored by Dr. Gabriel through written discovery and the depositions of the named individuals (other than David Gilbert and Ralph Mohney who were simply signatories on the agreements between Equitable and Paul Revere and who were not directly involved in the administration or handling of Dr. Gabriel's claim for benefits). All of these topics are irrelevant to Dr. Gabriel's claims against Equitable. Equitable has repeatedly stated that it assumes full responsibility for the actions of the Paul Revere employees who acted on Equitable's behalf in administering Dr. Gabriel's claim.

Joseph Hayre, Annemarie Klein, Paula Parry, and Robert Carey (who is not named in these requests) each testified at length in their depositions about topics numbered 6, 8 and 9. (See e.g. Exhibit E, Klein Depo., pp. 8, 36, and 67; Exhibit F, Hayre Depo., pp. 295; Exhibit J, Parry Depo., p. 14-16.[7]) They also provided testimony as to the identity of any other individuals who worked on Dr. Gabriel's claim, which is responsive to topic number 7. Furthermore, the names of each of the individuals who worked on Dr. Gabriel's claim are identified in the claim

---

[7] Selected pages of the deposition of Paula Parry are attached as Exhibit J and are referenced herein as "Parry Depo."

file, which has been in Dr. Gabriel's possession since shortly after the inception of this case some three years ago. These additional individuals' dates of employment with Paul Revere are irrelevant to Dr. Gabriel's claim against Equitable. In addition, in-house counsel for Paul Revere (Attorney George Thompson) informed Dr. Gabriel's counsel by his letter of September 18, 2002 (Exhibit 1 to Dr. Gabriel's Motion to Compel), that Paul Revere does not maintain training material on an individual basis.

Dr. Gabriel has already sought and obtained the discovery he seeks by these requests. Though this information is irrelevant to his claims, he obtained extensive testimony on it from the individual employees themselves. Who better to provide this information than them? In addition, none of these topics are relevant to the "reasons" Dr. Gabriel asserted as his need for this twelfth deposition. As such, he should not be permitted to obtain this duplicative testimony and his motion to compel should be denied.

> 10.    *The administration and denial of disability insurance benefits on behalf of the Equitable Life Assurance Society of the United States with regard to the claim for such benefits filed by Noble Gabriel.*

There is absolutely no reason for another deposition to be convened to discuss this topic. There has already been extensive deposition testimony from several Paul Revere employees and from the Equitable's 30(b)(6) designee on this topic. The Paul Revere employees who have testified are the people who handled and administered Dr. Gabriel's claim and who were involved in the determination to deny his claim in October 1998 because, as they have testified at length, he was no longer totally disabled as defined by his policy with Equitable. Indeed, one of them would likely be the Paul Revere 30(b)(6) designee on this topic as they are the ones who have the most knowledge of it. However, there is no need for this because they have already testified. In addition, there has been written discovery and correspondence between counsel on

this topic. There is simply no reason to convene yet another deposition to obtain testimony about this extremely well explored and well developed topic.

> *15. Each and every round table review of the disability insurance claim for benefits filed by Noble Gabriel pursuant to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States.*
>
> *16. The identity of each and every person who attended, participated and/or otherwise performed any action for The Paul Revere Life Insurance Company, and the Equitable Life Assurance Society of the United States, and/or any other business entity involved, for each and every round table review of the disability insurance claim for benefits filed by Noble Gabriel pursuant to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States.*
>
> *17. Any and all records and/or other documents which refer to, relate to, mention and/or otherwise describe each and every round table review of the disability insurance claim for benefits filed by Noble Gabriel pursuant to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States.*

A round table review is a meeting of a multi-disciplinary group of professionals, including but not limited to medical, legal, financial, claim, and underwriting, who consult with individual customer care representatives who have questions regarding the future handling of an ongoing disability claim. See Exhibit K, Affidavit of Annemarie Klein, para. 5. When a round table review takes place, it is documented in the claim file. Specifically, the recommendations from a round table review are written on a management referral form and are signed off on by the consultant. The management referral form becomes part of the claim file. Exhibit K, para. 6.

Each of the topics listed above relates to a round table review of Dr. Gabriel's claim for benefits under his policy with Equitable. However, there was no round table review of Dr. Gabriel's claim for disability insurance benefits pursuant to his policy with Equitable. Exhibit K, paras. 4-8. Simply put, this was not a claim that required a round table review.

There is no reason to grant Dr. Gabriel leave to take a deposition on topics that never occurred. All that will be accomplished is that a representative of Paul Revere will testify at deposition to the same matters attested to by a representative of Paul Revere in affidavit format. Therefore, Dr. Gabriel's motion to compel testimony on these topics should be denied.

*11.    Round Table Reviews conducted on behalf of disability policy holders of the Equitable Life Assurance Society of the United States from 1993 through 1998, including the number of each such round table review performed each month from June 18, 1993, through 1998.*

*12.    Procedures for determination and presentation of individual claims for disability insurance benefits of Equitable Life Assurance Society policy holders for round table review from 1993 through 1998.*

*13.    The annual number round table reviews performed on disability insurance claims of Equitable Life Assurance Society policy holders for the years 1993 through 2002.*

The topics of round table reviews as they pertain to claims other than Dr. Gabriel's bear no relevance whatsoever to any material issue in this case. It is undisputed that Dr. Gabriel's claim was not the subject of a round table review. This case is about Dr. Gabriel's claim, not anyone else's. As such, deposition testimony relating to round table reviews of other individual's claims under other individual's policies with Equitable, is irrelevant. Similarly, the number of such reviews annually, is irrelevant to this case. Finally, the procedures for determination and presentation of individual claims for round table review are irrelevant to this case.

Nevertheless, if Dr. Gabriel was interested in this irrelevant information, he should and could have asked it of one of the four current or former Paul Revere employees whose depositions he has already taken (Rob Carey, Annemarie Klein, Paula Parry and/or Joseph Hayre). He did not do so. Though he discussed with each of them every step they took, did not take and could or should have taken in handling Dr. Gabriel's claim, he did not ask them about

the topic of round tables. Notably, Dr. Gabriel's counsel's detailed questioning of the Paul Revere employees on their handling of this claim did not indicate a round table review ever occurred – because it did not.

Any possible claim by him that he could not have known about the topic of round table reviews prior to Equitable's 30(b)(6) deposition must not be credited. Dr. Gabriel's own expert witness, Peter G. Matson, (erroneously) opines that "it is standard practice to have certain claims reviewed by a ... 'roundtable review'" ..." (See Exhibit L at opinion 5.) Given his expert's opinion that roundtables are "standard practice," it should not have taken Dr. Gabriel until the deposition of Equitable's 30(b)(6) designee to determine that he wanted to inquire about this topic.

Furthermore, Dr. Gabriel's claim that he should be entitled to this deposition of Paul Revere because counsel for Equitable made references to Paul Revere having greater knowledge about round table reviews than Mr. Casill had, should not be credited. (See Memorandum of Dr. Gabriel in Support of His Motion to Compel, pp. 4-6, Exhibit D, Casill Depo., pp. 111, 112, 115, 116, and 117.) There is no reason that Dr. Gabriel could not have asked one or all of the four Paul Revere employees whom he deposed about round table reviews. Yet he did not do so.

Dr. Gabriel has extensively deposed several Paul Revere employees who handled this claim on many topics. He must not now be permitted to have a fifth bite at the apple and take a twelfth deposition on this irrelevant topic. Therefore, his motion to compel should be denied.

14. *The annual number of disability insurance claims of Equitable Life Assurance Society policy holders which were administered by the Paul Revere Life Insurance Company for the years 1993 through 2002.*

21. The total number of disability insurance claims for benefits filed by policy holders of the Equitable Life Assurance Society of the United States, which were administered by anyone on behalf of the Paul Revere Life Insurance Company, and which provided monthly benefits greater than $10,000.00 for the years 1993 through 1998, which were denied by anyone acting on behalf of the Paul Revere Life Insurance Company.

22. The total number of disability insurance claims for benefits filed by policy holders of the Equitable Life Assurance Society of the United States which provided monthly benefits greater than $10,000.00 for the years 1993 through 1998, which were denied by anyone acting on behalf of the Paul Revere Life Insurance Company.

23. The letter dated June 9, 1997, from Charles Wilder of the Equitable Life Assurance Society to Ralph W. Mohney of The Paul Revere Life Insurance Company, produced as one of the exhibits included with the service agreements between Equitable and Paul Revere for administration of disability insurance claims for Equitable by Paul Revere.

24. The amount of payment(s) received by The Paul Revere Life Insurance Company from the Equitable Life Assurance Society of the United States, for administration of the claim for disability insurance benefits presented by Noble Gabriel, during the time that disability insurance benefits were being paid to Noble Gabriel pursuant to his claim(s) for benefits with regard to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States, for the years 1995 through 1998.

25. The contractual and/or other basis and reasons(s) for any amount of payment(s) received by The Paul Revere Life Insurance Company from the Equitable Life Assurance Society of the United States, for administration of the claim for disability insurance benefits presented by Noble Gabriel, during the time that the disability insurance benefits wee being paid to Noble Gabriel pursuant to his claim(s) for benefits with regard to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States, for the years 1993 through 1998.

26. The amount of payment(s) received by The Paul Revere Insurance Company from the Equitable Life Assurance Society of the United States, for administration of the claim for disability insurance benefits filed by Noble Gabriel, after Paul Revere terminated the disability insurance benefits which were being paid to Noble Gabriel pursuant to claim(s) for benefits with regard to his disability insurance policy(ies) with the Equitable Life Assurance Society of the United States, for the years 1998 through 2002.